BARPIAM, Justice
(dissenting).
Fred Wilson Brumfield was charged with and convicted of manslaughter. Unlike the majority, I find that Bills of Exceptions Nos. 17-21 show prejudicial error which entitles the defendant to a new trial.
These bills are based upon repeated motions for mistrial because of statements made by the district attorney in his closing argument. The motions were overruled, and the judge did not instruct the jury to disregard the remarks. It is pertinent to remember that the accused was charged with manslaughter, not murder. The statements considered objectionable are as follows :
“* * * You have two eye witnesses who looked out that window and saw that *162 defendant with a gun blazing in his hand, still shooting at the victim. That’s quite a scene if you will imagine it in your minds, a lady running down the street with blood-curdling screams, with a huge man following her with a gun shooting at her. Think about that when you go back in that jury room.”
“ * * * I have gone into great detail to point out to you the steps in a criminal prosecution to show you the importance of you twelve men sitting in these chairs. Now this man sitting over here has every protection that the law can give in the United States of America. You have been sitting here watching for two or three days. Every step in his prosecution has to be carefully watched by the State of Louisiana. If we make one mistake there is a mistrial or - a Supreme Court reversal and we have to start all over again. Now his rights have been jealously guarded, not only by his very able attorney, but by the police who testified to you that they read him his rights before he signed that statement. His rights have been jealously guarded by the Judge, and his rights have even been guarded by me because I can’t afford to make a mistake. But I ask you this, and ask you to think about this when you go in the jury room, how about the rights of Emma Albritton. She was a Christian girl, she worked for a living, she lived with her mother and father, and she was a credit to the City of Hammond. She didn’t bother anybody. This man sitting here — look at him — Fred Wilson Brumfield, he arrested her by blocking the road, he prosecuted her in the street, he became her jury, he found her guilty, he sentenced her to death and he went one step further, he was her executioner — -right in the streets of Hammond.”
“ * * * and he did all of this because of the lack of response to his unwanted attention — this big man and this little woman. Now when hd shot her he took over all. the functions of law that are working in this courtroom to protect him — he took them away from her, but he’s getting that protection here today. He shot her in the back in cold blood and she never had a chance.”
“ * * * After he shot her the first time and she was fleeing from him and as she rounded the corner and came into the light of the house where she could be seen by other people, and even as her screams were curdling peoples’ blood in the night, he shot at her again to finish the job. Then he left her, he didn’t go * * * ” “ * * * And gentlemen even as he tried to shoot her the second time it was in the back too as she ran from him.”
A review of the jurisprudence ■ shows that this court is reluctant to reverse because of remarks by the district attorney, and it has often held that the error, if any, is cured by the judge’s instructions to dis *164 regard, which were not given in this case. The court has leaned heavily on the proposition that in order to reverse it must be thoroughly convinced thát the jury was influenced by the remarks, and that they contributed to the verdict. Exception is made when the remarks are considered to be the district attorney’s interjection of his personal opinion into the question of guilt, which is deemed to be a usurpation of the function of the jury and grounds for reversal.*
It is my considered opinion that the statements of the district attorney in the instant case were unnecessarily melodramatic and lurid, and were, and were intended to be, highly prejudicial. Indeed, it is difficult to find a reason for his making them except to arouse the emotions of the jurors against the defendant. If we continue oiir present course of allowing pur prosecutors to go beyond propriety in argument, there is no telling what the final result will be.
Article 774 of the Code of Criminal Procedure clearly and definitely prescribes the rules governing argument of counsel, and it is my view that we should give a more strict interpretation to this ! article' so that justice and fair-play will be assured the defendant during this phase : of the trial. If district attorneys and trial judges would consider non-reversible error — error m fact — and refrain from repetition of these errors, we could as a reviewing court be less severe in pronouncing error prejudicial and reversible. Plere, if I believe that future compliance with Article 774 could be had by holding this argument to be harmless error, I would concur. In the face of a deluge of inflammatory closing arguments in recent cases, I must dissent.

 Also considered reversible error, except in. certain circumstances, . are appeals to racial prejudice and references to the accused’s failure to testify; - ,.